CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 3 2016

JULIA C. DUDLEY, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| RODNEY HUBBARD and SAVANNAH HUBBARD, | ) ) ) |
| Plaintiffs, | ) Civil Action No. 3:16CV00018 ) |
| v. | ) **MEMORANDUM OPINION** ) |
| ANDREW HOLMES, JOHN DOES 1-3, and ALBEMARLE COUNTY, | ) By: Hon. Glen E. Conrad ) Chief United States District Judge ) |
| Defendants. | ) ) |

Rodney Hubbard ("Rodney") and his mother, Savannah Hubbard ("Savannah"), filed this civil rights action under 42 U.S.C. § 1983 against Andrew Holmes, a police officer employed by the Albemarle County Police Department; three unknown police officers; and Albemarle County ("the County"). Holmes and the County have moved to dismiss the plaintiffs' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.* For the following reasons, Holmes' motion will be granted in part and denied in part, and the County's motion will be denied.

### Factual Background

The following facts, taken from the plaintiffs' amended complaint, are accepted as true for purposes of the defendants' motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

On the morning of September 11, 2015, Holmes executed a traffic stop of a vehicle driving north on Route 29 in Albemarle County, Virginia. Rodney was driving the vehicle, and Savannah was riding in the passenger seat. At some point thereafter, three other officers arrived at the scene of the traffic stop.

---

* The County's motion was made orally at a hearing held on June 20, 2016.

After stopping the plaintiffs' vehicle, Holmes directed Rodney to exit the vehicle, searched his person, and placed him in handcuffs in the back of Holmes' patrol car. Holmes then searched Savannah's person and placed her in the back of another patrol car.

Holmes, with the assistance of the other officers, then conducted a warrantless search of the plaintiffs' vehicle. The search lasted approximately two hours. No contraband or evidence of a crime was found during the search. Rodney was ultimately issued a summons for driving a motor vehicle while his privilege to do so was suspended by the Commonwealth of Virginia.

Rodney and Savannah are African-American. They allege that Holmes, who is Caucasian, "has a history and practice of targeting African-American males for vehicle stops and intrusive searches," and that "[t]he stop and the search at issue here were motivated, in significant part, by the race of plaintiffs." Am. Compl. ¶ 13. Prior to the events at issue in this case, "[n]umerous complaints" had been lodged by African-American citizens of Albemarle County regarding Holmes' conduct in "improperly stopping cars and unlawfully searching people and places." Id. ¶ 14. The plaintiffs allege that no disciplinary or other corrective action was taken as a result of any of those complaints.

### Procedural History

In February of 2016, Rodney and Savannah filed suit against Holmes in the Circuit Court of Albemarle County. Holmes removed the case to this court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

On April 8, 2016, the plaintiffs filed an amended complaint against Holmes, three unknown police officers, and the County. The amended complaint asserts causes of action under 42 U.S.C. § 1983. In Count I, the plaintiffs claim that Holmes violated their "rights protected by the Fourth and Fourteenth Amendments to the United States Constitution to be free from

2

unreasonable seizures." Id. ¶ 16. In Count II, the plaintiffs claim that Holmes deprived Rodney of his "right to be free from the use of excessive force in violation of the Fourth and Fourteenth Amendments." Id. ¶ 20. In Counts Three and Four, the plaintiffs claim that Holmes deprived them of their "right to be free from unreasonable searches in violation of the Fourth and Fourteenth Amendments." Id. ¶¶ 23, 25. In Count Five, the plaintiffs claim that the conduct described in the complaint "violated [their] right to equal protection of the law as guaranteed by the Fourteenth Amendment." Id. ¶ 26. In Count Six, the plaintiffs assert a claim for municipal liability against the County.

Holmes and the County have moved to dismiss the amended complaint pursuant to Rule 12(b)(6). The motions have been fully briefed and are ripe for review.

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiffs' favor. Erickson, 551 U.S. at 94; see also Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

3

## Discussion

### I. Holmes' Motion to Dismiss

Holmes has moved to dismiss all five claims asserted against him in the amended complaint. The court will address each claim in turn.

#### A. Unlawful Seizure Claims

In Count I of the amended complaint, the plaintiffs claim that Holmes violated their rights under the Fourth and Fourteenth Amendments by stopping their vehicle "without reasonable grounds to believe [Rodney] was violating the traffic laws." Am. Compl. ¶ 16. The plaintiffs further allege that even if their vehicle was properly stopped, the length of the stop "exceeded the reasonable amount of time needed to write a ticket for driving while privileges were suspended and thus constitutes an independent seizure in violation of the Fourth and Fourteenth Amendments." Id. ¶ 19.

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "A traffic stop is a 'seizure' within the meaning of the Fourth Amendment and must be reasonable under the circumstances." United States v. Palmer, 820 F.3d 640, 648 (4th Cir. 2016) (citing Delaware v. Prouse, 440 U.S. 648, 653-54 (1979)). To assess the constitutionality of this type of seizure, courts employ the two-prong standard articulated in Terry v. Ohio, 392 U.S. 1 (1968). Id. Under the first prong, the police officer's decision to stop the vehicle must be "justified at its inception." United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 2011). Under the second prong, the officer's subsequent actions must be sufficiently "limited both in scope and duration." Id. at 507.

4

To the extent the plaintiffs claim that Holmes' decision to stop their vehicle was not justified at its inception, the court concludes that the plaintiffs have failed to plead sufficient facts to state such a claim. The plaintiffs merely assert that Holmes lacked reasonable grounds to believe that a violation of the law had been committed, without offering any factual allegations to support this conclusion. "It is now well established that mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss." Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 350 (4th Cir. 2013) (citing Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 678). In the absence of any factual allegations that would support the conclusion that the traffic stop was not justified by reasonable suspicion, the plaintiffs' claim under Terry's first prong must be dismissed.

The plaintiffs also challenge the legality of the stop under the second prong of the Terry analysis, asserting that the length of their detention "far exceeded the reasonable amount of time needed to write a ticket" for the offense with which Rodney was charged. Am. Compl. ¶ 19. It is well settled that "a seizure justified only by a police-observed traffic violation . . . 'becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission' of issuing a ticket for the violation." Rodriguez v. United States, 135 S. Ct. 1609, 1612 (2015) (emphasis added) (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)). However, an officer may lawfully extend a traffic stop if he "develops reasonable, articulable suspicion of ongoing criminal activity" or "probable cause to believe that the vehicle contains evidence of criminal activity." Palmer, 820 F.3d at 650.

In this case, the plaintiffs' amended complaint indicates that Holmes extended the traffic stop to conduct a search of their vehicle. Although the plaintiffs claim that the search was conducted without probable cause to believe that the vehicle contained evidence of a crime, the

5

amended complaint is devoid of facts that would support such conclusion. To withstand dismissal under Rule 12(b)(6), plaintiffs are required to plead enough factual matter to raise a "plausible inference" of wrongdoing. Iqbal, 556 U.S. at 682. In the absence of any factual basis for challenging the validity of the search, the mere assertion that the duration of the plaintiffs' detention was longer than necessary to issue a ticket is insufficient to state a claim for unlawful seizure. For these reasons, Holmes' motion to dismiss will be granted as to Count I.

**B.     Excessive Force Claim**

In Count II of the amended complaint, the plaintiffs claim that by handcuffing Rodney during the traffic stop, Holmes used excessive force in violation of the Fourth Amendment. The rights protected by the Fourth Amendment include "the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force." Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006). The issue of whether an officer used excessive force to effect an arrest or seizure is analyzed under an "objective reasonableness standard," which takes into account a number of factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 395-96 (1989). "Ultimately, the question to be decided is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" Smith v. Ray, 781 F.3d 95, 100-01 (4th Cir. 2015) (alteration in original) (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

Here, the plaintiffs allege that Holmes handcuffed Rodney "without a reasonable basis to believe that he was armed and dangerous." Am. Compl. 20. However, they provide no facts to support this assertion. In the absence of further factual enhancement, such a conclusory statement

6

is insufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Accordingly, Holmes' motion to dismiss will be granted with respect to this claim.

### C. Unlawful Search Claims

In Counts III and IV, the plaintiffs claim that Holmes violated their rights under the Fourth Amendment by conducting warrantless searches of the vehicle and their persons. "Warrantless searches are presumptively unreasonable 'except in certain carefully defined classes of cases.'" United States v. Patiutka, 804 F.3d 684, 688 (4th Cir. 2015) (quoting Cady v. Dombrowski, 413 U.S. 433, 439 (1973)). One such exception is the automobile exception, under which an officer may conduct a warrantless search of a vehicle if there is probable cause to believe it contains evidence of criminal activity. Arizona v. Gant, 556 U.S. 332, 347 (2009). Additionally, an officer may conduct a protective frisk of a vehicle's driver or passenger if he "harbor[s] reasonable suspicion that the person subjected to the frisk is armed and dangerous." Arizona v. Johnson, 555 U.S. 323, 327 (2009) (internal quotation marks and citation omitted).

In this case, the plaintiffs contend that "there was no probable cause to believe that there was evidence of a crime" in the vehicle, and that "there was no reason to believe that either plaintiff was armed and dangerous." Am. Compl. ¶¶ 23, 25. Once again, however, they do not offer any factual allegations to support either assertion. In the absence of any facts which plausibly suggest that the search of the vehicle was conducted without probable cause, or that Holmes did not have reason to believe that they were armed and dangerous, the court must dismiss Counts III and IV. See, e.g., Antonio v. Moore, 174 F. App'x 131, 137 (4th Cir. 2006) ("By repeatedly asserting that the warrant was issued 'without probable cause,' without offering any factual allegations underlying this legal conclusion, Antonio failed to meet the requirements of Rule 8(a) or 12(b)(6).").

7

D. **Equal Protection Claim**

In Count V of the amended complaint, the plaintiffs claim that Holmes' actions were racially motivated and thus violated their rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause prohibits officers from selectively enforcing laws based on race. Whren v. United States, 517 U.S. 806, 813 (1996)); see also Sow v. Fortville Police Dep't, 636 F.3d 293, 303 (7th Cir. 2011) ("Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause."). "[T]he right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment." Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003); see also United States v. Avery, 137 F.3d 343, 352 (6th Cir. 1997) ("The Equal Protection Clause of the Fourteenth Amendment provides citizens a degree of protection independent of the Fourth Amendment protection against unreasonable searches and seizures.").

"The requirements for a claim of racially selective law enforcement draw on what the Supreme Court has called 'ordinary equal protection standards.'" Marshall, 345 F.3d at 1168 (quoting United States v. Armstrong, 517 U.S. 456, 465 (1996)). The plaintiffs must establish "that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." Id.; see also Cent. Radio Co. Inc. v. City of Norfolk, 811 F.3d 625, 634-35 (4th Cir. 2016); Martin v. Conner, 882 F. Supp. 2d 820, 839 (D. Md. 2012). Although the plaintiffs are not required to show that discrimination was the defendant's "sole motive," they "must allege the requisite discriminatory intent with more than mere conclusory assertions." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (emphasis in original). Thus, to state a valid equal protection claim, the plaintiffs must set forth specific factual allegations that are probative of an improper motive. Id.

8

Applying these standards, the court concludes that the plaintiffs' amended complaint states a plausible equal protection claim against Holmes. The plaintiffs contend that the actions taken by Holmes were "motivated, in significant part, by the [plaintiffs'] race." Am. Compl. ¶ 26. To support this claim, the plaintiffs allege that Holmes "has a history and practice of targeting African-American males for vehicle stops and intrusive searches." Id. ¶ 13. The plaintiffs further allege that this practice existed at the time of the stop and searches at issue in this case, and that numerous, similar complaints of unlawful treatment had been lodged by other African-American citizens of Albemarle County. Assuming the truth of the plaintiffs' factual allegations, the court concludes that the amended complaint states a plausible selective enforcement claim under the Equal Protection Clause. See Washington v. Davis, 426 U.S. 229, 242 (1976) (explaining that "[a]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [practice] bears more heavily on one race than another"); Marshall, 345 F.3d at 1168 (observing that "a police officer's pattern of traffic stops and arrests . . . may support an inference of discriminatory purpose in this context"). Accordingly, Holmes' motion to dismiss will be denied with respect to this claim.

## II. Albemarle County's Motion to Dismiss

The plaintiffs also filed suit under § 1983 against the County. While a municipality is subject to suit under § 1983, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978), liability attaches "only where the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (emphasis in original). "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691 (emphasis in original). Instead, a municipality is only liable under § 1983 if it causes the

9

deprivation of a plaintiff's constitutional rights through an official custom, policy, or practice. Owens v. Balt. City State's Attys. Office, 767 F.3d 379, 402 (4th Cir. 2014); see also Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

In this case, the plaintiffs seek to hold the County liable for the alleged violation of their right to equal protection. In support of their claim, the plaintiffs allege that Holmes had "a history and practice of targeting African-American males for vehicle stops and intrusive searches," and that "[n]umerous complaints by African-Americans [had] been lodged by citizens with the County of Albemarle through its police department, prior to the incident herein, against Defendant Holmes, complaining about his conduct in improperly stopping cars and unlawfully searching people and places." Am. Compl. ¶¶ 13-14. The plaintiffs further allege that "no disciplinary or other corrective action was taken as a result of any of those complaints," and that the County "thereby acquiesc[ed] to Defendant Holmes' illegal behavior and implicitly encourag[ed] his practice of targeting African-Americans." Id. at ¶ 14.

The plaintiffs' complaint thus alleges a theory of custom "by condonation." Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987). "Under this theory of liability, a [municipality] violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" Owens, 767 F.3d at 402. To prevail under this theory, the plaintiffs "must point to a 'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicates that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Id. (quoting Spell, 824 F.2d at 1386-91).

Although prevailing under this theory of liability is "no easy task," Id. at 402, "simply alleging such a claim is, by definition, easier." Id. at 403. To withstand dismissal under Rule

10

12(b)(6), "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." Id. Nor must the plaintiffs "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." Jordan by Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir. 1994). Instead, "[a] plaintiff fails to state a claim only when he offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action." Owens, 767 F.3d at 403 (quoting Iqbal, 556 U.S. at 678).

Applying these principles, the court concludes that the plaintiffs have stated a plausible Monell claim against the County. The plaintiffs allege that Holmes had a history and practice of selectively targeting African-Americans, that the County was aware of this unlawful practice through numerous complaints made by African-American citizens, and that the County effectively sanctioned and endorsed Holmes' treatment of the plaintiffs by failing to take any disciplinary or corrective action. To prevail on this claim, the plaintiffs will bear the "difficult" burden of proving these allegations. Id. At this early stage, however, the allegations are sufficient to survive dismissal under Rule 12(b)(6). See, e.g., Smith v. Aita, No. CCB-14-3487, 2016 U.S. Dist. LEXIS 90029, at *13 (D. Md. July 12, 2016) (holding, at the Rule 12(b)(6) stage, that it was "enough that Smith has alleged that Salisbury was aware of ongoing constitutional violations by Salisbury police officers and did nothing to stop or correct those actions, thereby allowing an unconstitutional pattern to develop"); Garcia v. Montgomery County, Md., No. JFM-12-3592, 2013 U.S. Dist. LEXIS 120659, at *14 (D. Md. Aug. 23, 2013) (holding that the plaintiff stated a viable Monell claim against the county where the plaintiff alleged that the county "was aware of unconstitutional actions by [police] officers directed towards members of the media but chose to ignore such behavior").

11

## Conclusion

For the reasons stated, Holmes' motion to dismiss will be granted in part and denied in part, and the County's motion to dismiss will be denied. The plaintiffs' claims under the Fourth Amendment will be dismissed without prejudice, and their remaining claims against Holmes and the County will be allowed to proceed.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 3rd day of November, 2016.

*[signature]*
Chief United States District Judge