IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| RODNEY HUBBARD and SAVANNAH HUBBARD, | : |
| Plaintiffs, | : Case No. 3:16cv00018 |
| vs. | : |
| ANDREW HOLMES and ALBEMARLE COUNTY, | : |
| Defendants. | : |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Rodney Hubbard and Savannah Hubbard, by counsel, submit this memorandum in opposition to Defendant's motion for summary judgment.

### STATEMENT OF FACTS

A.   <u>Facts of the stop and search.</u>

Plaintiffs accept the Defendant's statement of facts solely for the purpose of this motion in which defendant only challenges plaintiffs' proofs regarding "disparate impact." Thus, nothing about the stop and search of plaintiffs or their vehicle is relevant to this motion.

B.   <u>Statistics</u>

80.56% of the people who live in Albemarle County are white and 9.69% black. (Exhibit A). In 2014, patrol officers in Albemarle County issued traffic summonses to 10, 250 drivers of whom 81.1% were white and 16.7% black. (Exhibit B) In 2015, patrol officers in Albemarle

County issued traffic summonses to 8,219 drivers, of whom 6,626 or 80.6% were white and 1,412 or 17.2% were black. (Exhibit C)

Officer Holmes usually works police sectors 1, 2 and 3 in Albemarle County. (Exhibit D, Holmes Dep. at 8-9). Sectors 1 and 2 have a population which is 18.21% black and 64.08% white. (Exhibit A). Significantly, two principal thoroughfares run through sectors 1 and 2, Hydraulic Road, a commuter route from Charlottesville's suburbs further north, as well as for shoppers to the major shopping center, Stonefield. (Exhibit D, Holmes Dep. at 94) and Rio Road, also a commuter route from the north . The further north suburbs, including police sector 3, encompassed within zip code 22936, have a population that is 93.2% white and only 2.2 % black. *See* census data at https://factfinder.census.gov/faces/ tableservices/jsf/ pages/productview. xhtml?src=CF.

Officer Holmes conducted 1055 traffic stops between 2010 and 2015. (Exhibit E).[1] During that same period of time, he issued 543 traffic summonses 49% to black drivers and almost 51% to white drivers. *Id*. Officer Holmes issued 92 traffic summonses to the 245 persons he stopped in 2015 of which 47 or 51% were to black drivers and 44 or 48% to white drivers. *Id*. For all of the other officers working police sectors 1 and 2, in 2015, 21.75% of 285 traffic summonses were issued to black drivers and 73.68% to white drivers.(Ex. F).

Of his arrests in 2015, 61% were of African-Americans persons and 39% of white persons and those percentages hold true (on average) for the five years 2010-2015. (Exhibit G). H

---

[1] Unfortunately, no record is kept of the reason for stops when no summons is issued. (Ex. G, Byers Dep. at 54-55). According to Mr. Holmes, his numerous stops that don't result in summonses are usually minor equipment problems, like having a brake light out or a window tint violation. (Ex. A, Holmes Dep. at 88).

That same year, 38.16% of the 207 arrests by all other officers working Sectors 1 and 2 were of black persons and 60.87% were of white persons. (Ex. H).

## ARGUMENT

I. <u>A Reasonable Jury Could Find Sufficient Evidence of Discriminatory Effect.</u>

Defendant maintains that plaintiffs' evidence fails to raise a triable issue as to disparate impact. In 1996, The Fourth Circuit adopted the Supreme Court's standard for proving selective prosecution as the standard for proving selective enforcement. *United States v. Bullock*, 94 F.3d 896, 899 (4th Cir. 1996)(citing *United States v. Armstrong*, 517 U.S. 456 (1996) and therefore, according to defendant, an African-American claimant would have to produce evidence of "similarly situated" white people who "could have been stopped and/or searched but were not." (Defendant's Memorandum at 9). However, as several other courts of appeal have held, selective enforcement cases are different, largely because it would be impossible to prove that similarly situated white drivers were not stopped and/or searched as there are no records of who is not stopped and who is not searched. *See e.g. Farm Labor Organizing Committee v. Ohio State Highway Patrol,* 308 F.3d 523 534 (6th Cir. 2002)("A claimant can demonstrate discriminatory effect by naming a similarly situated individuals who was not investigated or though the use of statistical or other evidence which 'addresse[es] the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated.'"); *Pyke v. Cuomo*, 258 F.3d 107, 108-110 (2nd Cir. 2001)("[A] plaintiff who . . . alleges that a facially neutral statute or police has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or police with an adverse effect was motivated by discriminatory animus, is not obliged to show a better treated similarly situated group of individuals of a

different race in order to establish a claim of denial of equal protection."); *Chavez v. Illinois State Police*, 251 F.3d 612, 639-40 (7th Cir. 2001)("[P]laintiffs do not have to provide the court with the name of an individual who was not stopped; instead they may attempt to use statistics to show that the ISP treated them differently then other motorists who were similarly situated."). Most importantly, one of the Fourth Circuit's most recent opinions on the matter raises questions about the continuing validity of *Bullock*. In *United States v. Hare*, 820 F.3d 93, 101 (4th Cir. 2016), the court recognized the validity of the defendant's arguments that there is a significant difference between selective prosecution and selective enforcement cases. As to the distinction, the court noted that:

> In a meritorious selective prosecution claim, a criminal defendant would be able to name others arrested for the same offense who were not prosecuted by the arresting law enforcement agency; conversely, plaintiffs who allege that they were stopped due to racial profiling would not, barring some type of test operation, be able to provide the names of other similarly situated motorists who were not stopped.

*Id.* at 100, 101 (citing and quoting *Chavez v. Illinois State Police, supra*. 251 F.3d at 639-40.[2]

      This Court ruled that these statistics in a parallel case could not be used to prove discriminatory effect both because they "contain nothing about individuals "similarly situated" to Plaintiffs and because there was no expert testimony to give meaning to the numbers. *Johnson v. Holmes*, Case No. 3:16cv00016, ECF# 84 at 9-10 (March 19, 2018). Yet Judge Conrad had found that the very statistics at issue here "provide further support for a finding of discriminatory intent and effect." *Johnson v. Holmes*, 3:16cv00016, ECF# 57 at 14. In addition, he had no

---

[2]The *Hare* court also noted that *Armstrong* was primarily concerned with respecting the province of federal prosecutors. *Id.* at 101.

problem recognizing, without expert testimony, that "Holmes cited and arrested African-Americans as a significantly higher rate than other officers in his department. The statistics also reveal a striking disparity between the percentage of Africa-Americans in the relevant population of Albemarle County as compared to the percentage of African-Americas cited and arrested by Holmes." *Id*. The racial disparity between Defendant Holmes' citations and arrests and the population of the area he patrols and, more importantly, the racial disparity between his citations and arrests and those of other officers working the precise same sectors, establish the disparate impact of his conduct.

                Respectfully submitted,

                RODNEY HUBBARD and
                SAVANNAH HUBBARD
                By Counsel

 s/Jeffrey E. Fogel
Jeffrey E. Fogel, VSB #76345
Attorney at Law
913 E. Jefferson Street
Charlottesville, VA 22902
434-984-0300 (Tel)
434-220-4852 (Fax)
E-mail: jeff.fogel@gmail.com
Counsel for Rodney Hubbard and Savannah Hubbard

## CERTIFICATE OF SERVICE

      I hereby certify that on April 5, 2018 I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send information of such filing to the following:

Jim H. Guynn, Jr.
Guynn & Waddell, P.C.
415 S. College Avenue
Salem, VA 24153

s/ Jeffrey E. Fogel